Judgment rendered September 25, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,911-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

RICHARD McDONALD                          Plaintiff-Appellee

versus

CITY OF BASTROP                           Defendant-Appellant

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-E
Parish of Ouachita, Louisiana
Trial Court No. 16-06248

Brenza Irving-Jones
Workers' Compensation Judge

* * * * *

HUDSON, POTTS & BERNSTEIN,          Counsel for Appellant
L.L.P.
By: Johnny R. Huckabay, II
    L. Casey Auttonberry

LAW OFFICES OF STREET &             Counsel for Appellee
STREET
By: C. Daniel Street

* * * * *

Before WILLIAMS, PITMAN, and McCALLUM, JJ.

McCALLUM, J., concurs with written reasons.

**PITMAN, J.**

The City of Bastrop ("the City") appeals the judgment of the Office of Workers' Compensation ("OWC") judge, which accelerated payment of an award of supplemental earnings benefits ("SEBs") in favor of Plaintiff Richard McDonald. For the following reasons, we reverse.

## FACTS

This court rendered a judgment in *McDonald v. City of Bastrop*, 52,366 (La. App. 2 Cir. 9/26/18), 254 So. 3d 1285, upholding the OWC's decision awarding Plaintiff SEBs. The facts, as stated in the opinion, are that Plaintiff was employed by the City as a fire captain. He was injured in an accident on April 21, 2013, at a house fire in Bastrop, Louisiana, when a fire hose he was pulling over his shoulder got caught and jerked him, injuring his neck and shoulder. He consulted a neurosurgeon and had surgery on his neck. He was released to work, but with weight-lifting restrictions. He had indicated that he wanted to take part in the Deferred Retirement Option Program and intended to continue working in whatever capacity he could. He began receiving workers' compensation benefits in September 2013; but in September 2016, he filed a disputed claim for compensation, Form 1008, against the City and claimed his SEBs had been wrongfully discontinued based on a false claim of retirement or voluntary withdrawal from the workforce.

His complaint was heard by the OWC judge, who ruled in his favor and ordered the City to pay him $1,303.76 per month beginning August 11, 2016, and to continue paying in accordance with the law. The City appealed to this court, which, in the appeal mentioned above, affirmed the judgment

of the OWC.  No review of the decision was sought with the Louisiana Supreme Court, and the judgment became final on October 26, 2018.

The City failed to pay the judgment due to Plaintiff; and because more than 30 days had elapsed since the judgment became final on October 26, 2018, Plaintiff filed a pleading entitled "Motion for Penalties and Attorney Fees and for Acceleration of Judgment," alleging that under the provisions of La. R.S. 23:1201(G) he was entitled to recover a penalty of 24 percent of the amount due under the judgment, together with attorney fees to be fixed by the court.  He also alleged that because more than six successive weekly payments had not been paid, he was entitled to have the judgment accelerated under La. R.S. 23:1333.  He further alleged that he was entitled to recover the judgment amount through December 29, 2018, or 124 weeks at $300.87 per week, which equaled $37,907.88, with legal interest from the due date of each payment until paid, plus a penalty of 24 percent of that amount.  He further alleged that after calculation of the judgment through December 2018, the amount of SEBs remaining of the ten years of payments was $67,394.88, which represents 224 weeks at $300.87 per week.

After the motion was filed, the City issued a check on January 16, 2019, for $50,791.20, which was the amount of the judgment with interest, plus the 24 percent penalty and attorney fees covering the period between August 12, 2016, and January 16, 2019.  The monthly SEBs were resumed. The hearing on the motion to accelerate was held on February 11, 2019. Plaintiff's attorney proved that he had made two written reminders to the City's attorney, prior to the filing of the motion, of the need to pay the SEBs. The City argued that acceleration was improper since the oversight in payment was not willful and, therefore, was not an appropriate remedy under

the statute and jurisprudence. The City further argued that the failure to pay was caused by miscommunication between its attorney and the City after this court's judgment was rendered and while the attorney awaited instructions regarding seeking writs to the Louisiana Supreme Court on the appellate decision. They termed this miscommunication an "administrative error," and alleged that during this time period "several key personnel for the client [were] out of the office and it slipped through the cracks." As soon as Plaintiff's motion was filed, the City immediately paid the judgment due at that time, with interest and penalties, and resumed the payment of the SEBs. For these reasons the City claimed the failure to pay was not willful.

At the hearing on the motion, the OWC judge stated that she had considered the legal definition of "willful" and found several, including "preceding [*sic*] from a conscious motion of the will, intending the result which comes to pass, or with the specific intent to fail to do something." Another definition of "willful" was "[I]ndifferent to the natural consequences." The OWC judge found there was specific intent based upon the failure to pay itself and also found that the person who failed to authorize payment of the judgment was indifferent to the natural consequences and effects of La. R.S. 23:1333 and the Workers' Compensation Act. For these reasons, the motion to accelerate was granted, but the City was given credit for the payment it had already made. The judgment stated that there was judgment in favor of Plaintiff and against the City granting Plaintiff's motion for acceleration and awarding him $67,394.88, representing 224 weeks of SEBs.

The City appeals this judgment granting the motion to accelerate the payments for its failure to pay in a timely fashion.

3

**DISCUSSION**

The City argues that the penalty provided in La. R.S. 23:1333, by which compensation benefits are accelerated upon failure of the employer to pay six successive installments, cannot be invoked unless the failure to pay by the employer is willful. It reiterates its arguments from the OWC hearing that there was no willful refusal to pay, just an unfortunate miscommunication. It contends that the statute was not designed to punish the employer, but to protect an employee against the insolvency or approaching insolvency of an uninsured employer by granting the employee the right to obtain a judgment for the employer's entire accelerated compensation liability. Its immediate payment of the amount due, along with penalties and attorney fees, without court involvement, shows there was no willful refusal. This is a case of mere oversight, and it clearly did not intend the result.

For these reasons, the City argues that Plaintiff failed to meet his burden of proof that its failure to timely pay the six successive installments was willful, and the OWC judge erred in accelerating the payments.

Plaintiff argues that he was without payment of SEBs for years while his case was pending at the OWC and then at this court. In the meantime, he was still fighting with the City to get treatment and an MRI for his neck injury. He states that after the judgment of this court became final in October 2018, his attorney sent two letters to the City reminding it that the payments to him were due and were to be sent to his attorney's office. The City failed to respond. It was not until he filed his motion to accelerate that the City finally took action—some 12 weeks after the judgment became final.

4

Plaintiff further argues that the decision of the OWC hearing officer is reviewed under the manifest error/clearly wrong standard; and, if the decision is supported by evidence in the record, it cannot be manifestly erroneous or clearly wrong. He contends that review of this matter will show that the decision of the OWC judge is backed by solid evidence and that the City produced no evidence at the hearing.

Plaintiff also argues that the two reminders to the City that his payments were due convinced the OWC judge that the City's failure to pay was willful. The fact that his attorney was communicating with the City regarding ongoing medical problems indicates that someone at the City was handling his case; therefore, it is unreasonable to think that for 12 weeks "key personnel" at the City were unable to make the payments due to him after the judgment became final. Further, he contends that the City's only evidence allegedly showing its failure to pay was not willful was a City employee affidavit attached to a memorandum stating that the failure to pay was due to an oversight rather than willful.

La. R.S. 23:1333(A) states as follows:

> If the employer against whom an award awarding compensation has been rendered becomes insolvent or fails to pay six successive installments as they become due, the installments not yet payable under the award shall immediately become due and exigible and the award shall become executory for the whole amount; but if the employee or his dependent is adequately protected by insurance and receives payments thereunder this right shall not accrue.

In *Dyke v. Time Warner Cable*, 42,216 (La. App. 2 Cir. 6/27/07), 961 So. 2d 602, this court stated that four statutory elements must be satisfied prior to accelerating a prior award of weekly benefits. They include: 1) an "award awarding compensation" against the employer,

2) insolvency or failure to pay six successive installments as they become due, 3) installments not yet payable under the award, and 4) the employee is not adequately protected by insurance and receiving payments thereunder. *Citing Atwood v. Ewing Timber, Inc.*, 36,732 (La. App. 2 Cir.1/29/03), 836 So. 2d 1199, *writ denied*, 03-0888 (La. 5/16/03), 843 So. 2d 1134.

Because La. R.S. 23:1333 imposes a very harsh penalty and because forfeitures are not favored in the law, jurisprudential interpretation of the statute has added two more requirements which must be met before the penalty can be invoked. *Mason v. CCC Express, Inc.*, 32,759 (La. App. 2 Cir. 3/1/00), 754 So. 2d 352, *writ granted*, 00-0918 (La. 6/16/00), 763 So. 2d 610. Those requirements include a showing that the employer's failure to pay the installments was a willful refusal to pay and that the employee made demand on the employer for past due payments. *Id.*

In *Mason v. CCC Express, Inc.*, *supra*, this court held that the mere context of willful behavior does not relieve the petitioner of first making a demand upon the employer. An allegation of willful failure to pay under the statute did not result in a waiver of demand for the payment. The requirement of the demand is not just to inform the employer of its nonpayment, but is also meant to put the defendant on notice and provide an opportunity for it to litigate the issue prior to a motion to accelerate. Therefore, without such a demand, the acceleration penalty could not be invoked.

Louisiana courts have tempered the harshness of the forfeiture penalty found in La. R.S. 23:1333. *Dyke*, *supra*. It is the claimant's burden to prove the willful withholding of benefits by the employer and to demonstrate that notice of such delinquency was given in the form of a

6

demand for payment. *Id.* The two are related because if the employer ignores the notice and continues in its failure to pay benefits ordered under a prior court award, the willfulness of the delinquency is indicated and eliminates the possibility of a negligent failure to pay. *Id.*

*Dyke*, *supra*, is instructive on the issue of the petitioner's ability to invoke the acceleration penalty when he fails to make a demand upon the employer. The case is also instructive in regard to timing of payment and when it might still be found to have been made in good faith. In *Dyke*, the parties began to negotiate payments after the appeal delay had run, even though eight weeks had passed since the judgment and payments were made in full prior to institution of the lawsuit. This court found the actions in payment were proof of good faith by the employer, not a willful refusal to pay.

In the case at bar, the City's attorney stated that his client's failure to pay was a result of negligence and was not intentional in the normal sense of the word. Plaintiff's attorney sent the City "reminders" that his client's judgment had not been paid, but whether these reminders qualify as demands is an issue we need not reach. When Plaintiff filed his motion to accelerate the payments, the City immediately responded by paying the amount due with penalties and attorney fees, as calculated by Plaintiff's attorney, and it also began paying the SEBs. These actions indicate that the City was not willful in its actions, but simply grossly negligent.

With regard to the assessment of costs of this appeal, La. C.C.P. art. 1920 states that unless the judgment provides otherwise, costs shall be paid by the party cast; however, it also states, except as otherwise provided by law, that the court may render judgment for costs, or any part thereof,

7

against any party, as it may consider equitable. *See Commodore v. City of New Orleans*, 19-0127 (La. App. 4 Cir. 6/20/19), 275 So. 3d 457. Thus, it is within the discretion of the trial court, and this court, to assess costs against the parties in an equitable manner.

In this case, we find it inequitable for the Plaintiff to have to pay the City's cost of appeal when the ruling was reversed only because the law is amorphous or subject to broad interpretation by the courts. For that reason, all costs will be assessed to the City of Bastrop in accordance with law. La. C.C.P. art. 1920.

## CONCLUSION

For the foregoing reasons, we find that acceleration of the payments is a remedy not favored by the courts and the judgment of the Office of Workers' Compensation judge in favor of Plaintiff Richard McDonald and against the City of Bastrop accelerating the payments is hereby reversed. All costs of the appeal are assessed to Defendant/Appellant, the City of Bastrop.

**REVERSED**.

**McCALLUM, J., concurring.**

The majority opinion astutely observes that "the law is amorphous or subject to broad interpretation by the courts," as concerns the forfeiture penalty provision of La. R. S. 23:1333. Indeed, a survey of the applicable cases on the issue reveals a patchwork approach that may appear to be more a product of improvisation than deliberate planning. This state of affairs creates no mere inconvenience or talking point for legal academicians. Practical and substantive implications are a result for citizens and practitioners alike.

Employees, employers, and those who counsel them are without clear guidance to direct them in their relationships with each other. In this area of the law, they are left to something approaching divination in any effort to arrange and govern their affairs. The economic viability of our state depends, in no small measure, on the ability of employees and employers to understand the mutual, corresponding rights and responsibilities they enjoy and owe. This may seem to be a small and incidental point in the broader spectrum of employment law, but one may rest assured that the parties involved in this specific case give great importance to the matter under consideration.

The majority opinion appropriately pretermits as unnecessary a discussion of whether the "reminders" given by Petitioner were sufficient for triggering the forfeiture penalty of La. R. S. 23:1333. Nonetheless, if one were to speculate, it is unlikely that these reminders, arising incidentally during the course of settlement negotiations, would be adequate for the imposition of the punitive provisions of the statute in light of judicial pronouncements requiring a "demand." Even had this Court made such a

1

determination it would offer no dependable basis for future actions or decisions because the weight of one court's announced rule is dependent on another court's willingness to follow it.

The majority opinion is also correct in pointing out that "jurisprudential interpretation of the statute has added two more requirements which must be met before the penalty can be invoked." Absent legislative intervention, the courts of our state will be obliged to continue to fashion case-by-case remedies as they arise. This in turn subverts a foundational precept in the civil law tradition of this state: laws should be made by the people through their elected legislators and not by judges. Contrary to the common law, our civilian tradition, often castigated by those not familiar with it, vouchsafes the right of citizens to write the law and delegates to judges the more limited responsibility of applying the written law to the facts of particular cases. To do otherwise would transform our civil law tradition into one that is common.